Please be seated, ladies and gentlemen. We're very pleased to be sitting here in Portland, Oregon. Once a year we sit around the country, and this year we've chosen to sit in Portland. We have five cases on the calendar this morning, illustrating the variety of cases we hear. The first two are Little Tupper Act cases from the District Court, and we're going to hear them in combined fashion. We have a patent case from the District Court, we have a Veterans' Appeal, and a Government Employee case, both of which are being submitted on the briefs, they're pro se and they will not be argued today. The first two cases being heard together are Russell v. United States. The appeal numbers are 2010-14-98 and 2010-12-30. They have been allotted 20 minutes each side for the two cases, and Mr. Fischer will argue for appellant, and has chosen to spend 15 minutes arguing in reserve for five. So please proceed, Mr. Fischer. Thank you. May it please the Court. This case is a little bit unusual because there have been significant developments in the law since the trial court made its original decision, on which it based the judgment in this case. That decision was Briggs v. United States, reported at 564 Fed Second 1087 in 2008, which is a companion case, in which case the trial court said that if the individual plaintiff were offered relief that would mute his individual case, that the entire case, including the class action, would be moot. And later the court referred back to that decision in making the decisions that ultimately led to the dismissal in this case. That original Briggs decision is directly contrary to the Pitts v. Terrible Herbst case that the Ninth Circuit recently decided, which the Ninth Circuit said that if you offered the judgment, even if you offered an individual judgment to the named plaintiff, that that would not moot the class case because the timely filed class certification motion would relate back to the beginning of the case. But didn't Pitts deal with, or talk about, picking off the lead plaintiff? That didn't occur here because the government was paid off, reimbursed 30,000 people. This wasn't a case of just picking off the lead plaintiff to defeat the class action. You're absolutely correct, Your Honor, and I'm going to address that exact issue because that's the question that becomes in this case. That wasn't an issue in the case that was decided, the Briggs v. United States case that the judge originally decided, was a case where the government just offered the named plaintiff his relief, no relief to anyone else. And the trial court said if you offer that relief before the class certification motion is filed, then the whole case is over, including the class action. And the court referred back to that decision and relied on that decision. Hence, later decisions that led to the dismissal in this case. It's true that it added, there were some other wrinkles there, as the court just pointed out. And the question in this case, then, is can we distinguish this case from Pitts? And I think that the answer on the class cases is no. I want to first, though, talk about the individual case and whether the individual case can be mooted. In that case, the trial court said that if you paid the remaining claim of $149 to the plaintiff seven months into the case, that the case would be moot and be dismissed. And you didn't have to give the plaintiff what he would have gotten after trial. You didn't have to give him a judgment. You didn't have to give him court costs. You didn't have to give him attorney's fees. The court said the case is moot. And it relied there on this Lewis v. Continental Bank case, which I want to talk about in a minute, because I think that case is easily distinguishable. And then we have the class case, the question of whether the whole class is moot by this $149. And the court, again, said it was and relied on the fact that it was filed, the payment was made before the class certification was filed, although it was only a couple of days before the class certification motion. And the motion to dismiss had been made before the motion for class action. Exactly, Your Honor. About three days before the class action motion was filed, the motion to dismiss was filed. And in that case, I think that it's clear that if the Pitts decision were applied, that the class certification would have been effective as of the filing of the complaint, and the case would not have been moot. But let's turn first to this individual case. Can I ask you a question, a factual question, which may or may not be terribly important, but it's left unresolved, at least as far as I can see in the record. The $149 check was tendered, I take it, through counsel, I assume you, and we don't have anything on the record that suggests whether there was a formal rejection of the tender or whether there was any form of acceptance. I assume the check was not cashed, but there's nothing in the record that suggests that it was. I still have the check, Your Honor. You have? It's not cashed. Right. Now, there is some suggestion in some of the cases that it matters as to whether the offer or tender of an amount requested by the named plaintiff was rejected or accepted. What do we do with a situation in which it was not cashed, but there was not, at least so far as I can tell, a formal rejection of the tender? Well, first of all, I think the cases say that the only difference when it matters is if the offer is accepted. Well, there's language. It depends on how you read the cases, because I read them fairly carefully with respect to this issue because this puzzled me, that you had not either said yea or nay. And most of the cases, somebody will have either said yea or nay, so the cases deal with it as a binary issue. But your case is one in which the check seemed to just sit there, and you didn't say no, we won't take it. Is that correct, by the way? Have I got the record down right? In this case, there were two checks. First, there was a $150 check. That was rejected, and the court's opinion talks about the rejection of that payment. But that was for the UCDPP, right? Yes, but the… But for the DPP, that was the $146 check, right? $149, yes, Your Honor. I'm sorry, $149. And that's the one that's sitting in your file somewhere. But that's the one which… It was posted in my file, Your Honor, but… But let me ask you a direct question on this. Have you ever said no, we don't want it? In the record, I don't think there is something other than the fact that we opposed the motion to dismiss, which I think is inherent in that is the fact that it wasn't accepted as being rejected. I thought, quite frankly, that there was an email which we'd sent, but I guess what we did was we sent… When the first one came, we rejected it. It was very clear. After that, I guess we must have just assumed that they understood it was being rejected. If you did not formally reject the tender, the check, then why shouldn't we assume that you accepted it? Because I think the key is two things. One is the check was not cashed. And secondly, and I think that in itself shows it wasn't accepted. And I think also the critical fact in terms of the relevance to whether a case is moot is whether you've accepted the offer of the defendant. In other words, you're not fighting anymore. You're saying this case is over by accepting it. Now, if you look at the facts in this case, it's obvious that that didn't happen. So I think that… But I want to turn also not to that question of that $149, but the question of can you moot a case, an individual case, by offering $149 seven months into the case? And the trial court believed that this Lewis case said that, but there's a lot of other cases that say basically you have to offer the plaintiff everything they could have gotten after trial. Well, when you refer to Lewis, it seems to me there are two different questions going on here, and they need to be teased apart. One is whether a tender of the amount requested by the named plaintiff, the putative class representative, is enough to moot the case when it's clear that a class certification motion will be filed, but it hasn't yet been filed. And it seems to me it's a fair reading of Pitts, as you've argued, is that it doesn't moot the case at least where the tender was rejected. I would tend to read Pitts that way, and that's the way you're arguing that Pitts should be read. However, what Lewis stands for, it seems to me, is the rather different proposition that a case which has been mooted with respect to the principal request for relief doesn't avoid mootness by virtue of the continuing request for ancillary relief in the form of attorney's fees and costs. So with respect to your first question, it seems to me that's a Pitts question. With respect to the question of whether attorney's fees and costs avoid mootness that would otherwise obtain, that's the Lewis question. And on that, it seems to me Lewis has pretty good authority to say you don't avoid mootness simply by having a pending attorney fee claim. Well, there, Your Honor, I think that Lewis doesn't stand by the proposition at all. I think that the apparent conflict is resolved in this Law Review article by Professor Matthew Hall. Well, with respect to academics everywhere, Lewis is a Supreme Court case in the Law Review article, which I know the one you're referring to is a law professor. And between the two, I'll take the Supreme Court. Well, first of all, this Law Review article is cited both by Lucero, the Tenth Circuit case, and by Pitts in the Ninth Circuit. So it's one that I think has been adopted in opinions there. And what it does, it doesn't try to espouse some new theory. What it's trying to do is explain what the courts are doing in their decisions. And what he points out is that there's two kinds of mootness. One is issue mootness, and one is personal stake mootness. And what he points out is that if the question in the case is issue mootness, then the courts take a very strict position and say that there's no jurisdiction. That's what happened in Lewis. It was a case where they were trying to get a bank opened in Florida and trying to force Florida to let them do that. Well, then the law changed, federal law changed, and there wasn't an impediment. They could open that bank, and so the case was moot. And they said, well, I want to get attorney's fees. And the courts said, well, no, your issue here is moot. And on the other hand, you have personal stake mootness. And what Professor Hall points out correctly is that when there's personal issue, personal stake mootness, that the courts take a more flexible stand, and they look at these factors, other factors, these prudential factors. Let me ask you the question to try to get to the heart of this issue, because this is one of two questions that at least troubled me. There was a payment, I take it, to a very large number of potential class members with respect to the UCDPP part of the case that Judge Alsop referred to as enough of a payment to not just pick off the named plaintiff but to pick off the entire class, I think was his way of characterizing it. Now, on the assumption, which may or may not be true, but on the assumption that that payment made to all potential members of the class, 150,000 or so, with respect to the uniform part of the case, if that was enough to pay the claims of each of those members, does that part of the case remain not moot because of any remaining potential claim for attorney's fees or cost by the named plaintiffs, in your view? Now, we're switching from the individual thing that I wanted to talk about. I know, I know. This is, to me at least, this is an important element of the case with respect to the role of the attorney fee and cost request. I'm using the UCDPP to try to get at whether you think once the claims of every class member have been adjudicated favorably or have been resolved favorably by a payment, whether anything remains to be adjudicated because of the attorney fee and cost request by the named plaintiff. Well, I think that the answer to that, I do want to come back to this individual case because I think really you can resolve this thing based on the individual mootness issue. You don't ever have to get to this class thing because I think it's very clear if you follow the Simmons decision from the Fourth Circuit that the individual case is not moot. That may or may not be, but what is your answer to that question? Let me answer this question. What Pitts says, Lucero, Wise, Sandoz, all these decisions say that if you have a timely filed class certification motion, it relates back to the beginning of the case. What that means is, theoretically, is when you file a class action case you have two different interests involved. One is the class interest and one is the individual interest. And if you think of certification at that time, the question is if you had a certified class and the defendant said, okay, I'm going to send off a bunch of checks to people and I'm going to send you a check plaintiff and judge, I want you to dismiss this certified class. Would the judge do that? Or would the judge say, well, this is a class action, it's a certified class action. We're looking at when you relate back, you're saying at the time that happened the case is certified. And that's the key. So what would, in a certified case, can you do that? Can you say, judge, I'm going to send off payments to all these class members? I think we understand that. But in your case, there was no certified class. Well, the question is, are you going to accept the view of the 9th Circuit, the 10th Circuit, the 3rd Circuit, the 4th Circuit, the 5th Circuit? Are you going to take those? Is that the line you're going to follow? And if you follow that line, then what you do is you relate back the class certification to the filing of the complaint. So if you relate back to the filing of the complaint, then when these things happen, you treat it as if it's a certified case. May I ask you another question, getting on to the question that Judge Lurie raised before. And I think we understand your position with respect to the individual claim. But this, as Judge Lurie alluded to, was not a case in which only one tender had been made. This was a tender to probably a third of the class, or at least it was an audit of a third of the class and a tender to 32,000 people. In your view, if we assume that the case would be moved, and assume with me for the moment that the case would be moved if everyone in the class had been paid, what do we do with a case in which the government has paid more than just the named plaintiff, but fewer than all of the class members, but is acting with the continuing intention to try to resolve all the other claims? What do we do with that middle case? I think you follow Pitts, Lucero, Weiss, Sandoz, and you say, I'm going to treat this case as if it was certified. I'm going to look at the certification. If it's certified as of the time the case was filed, I'm going to look at it and say, what would be the circumstance in that case? So I take it your answer to that question is the same as your answer to the individual claim, which is, you mean the interim case is not to be resolved the same way as a pick-off of one plaintiff? I think there's other issues. In the pick-off situation, one of the key factors you've got there is the administration of the Little Tucker Act. The Little Tucker Act is an act which allows individual plaintiffs with small claims to file their claim against the government anywhere in the country in their local U.S. District Court. That claim, in this case, was $300. If you can file a $300 claim, your filing fee is $350. And what the government's position here is, and which I think is very important for this court's jurisdiction, the government's position is that even though in this case you were given the complaint, the government was given the complaint two months before it was filed, so they had plenty of time to pay the money, they litigated the case actively for seven months thereafter, and then they sent combined amount, this $300. And if your jurisdiction is destroyed by that, then every case out there, every Little Tucker Act case that is certainly all the ones lower than the filing fee, will never be filed because the plaintiff can have his case taken away at any point by the government, despite offering the original damages without any costs or attorney's fees. Mr. Fisher, you wanted to say five minutes. It's almost gone. Why don't we give you back three minutes and we'll hear from the government.  May it please the court. My name is Alicia Hunt on behalf of the United States. There are two appeals before this court today, and the district court should be affirmed on both appeals. I will address each appeal in turn. On the first appeal, the district court dismissed Mr. Russell's claim as moot and should be affirmed. Now, before I turn to my arguments, there are a few facts I would like to clarify up front since so much of what Mr. Russell argues is a distraction from the core issues in this case. Counsel, a question that I've always had, and you're headed into the facts and perhaps you can answer this, is what prompted the audit against Mr. Russell and the 46,000 other accounts? When this issue came to the exchange's attention, it conducted an audit. There were other audits ongoing at the time. So the lawsuit prompted the audit? I think it's fair to say yes. So when this issue... So a few other facts I'd like to clarify. The first is that the exchange has paid Mr. Russell. It delivered a refund check to him that exceeded even the amount of damages that he claimed due. He never rejected this refund check. There was no offer. There was no rejection. And you're saying not cashing it is not a rejection. Cashing it might be an acceptance, but not cashing it is not a rejection? I think it's arguable that he has accepted by holding on to it for the 18 months at this point it's been delivered to him, but he never rejected it. It's probably not cashable at this point. That much time goes by and typically a bank won't honor a check. Or a government check I think says 90 days on it or something. So it would seem to me reasonable to say after 90 days. In the real world, this is a bit of a fiction here, but in the real world he's not accepted the money. Well, he never rejected it. Should he really be deciding this case on the highly technical ground that he didn't send you back a copy of the check or a notice saying we don't want it when it was quite clear he wasn't accepting it? Well, he never argued in the court below that he was rejecting the check. And I would point the court to the Holstein case from the Seventh Circuit as well as the Circuits Roth case where it says that a plaintiff may not spurn all the damages due to him and proceed to trial. So I would point the court to those two cases. Your argument is that when you submitted that check you fully satisfied the claims or at least Mr. Russell's claim, correct? Yes, he has a Little Tucker Act contract damages claim. Why did you not submit this via a Rule 68 offer of judgment? Well, this check came as part of a voluntary audit conducted by the exchange of tens of thousands of accounts. I'm saying if your argument is that the check satisfied all the legal claims in the lawsuit, then why was it not made under an order of judgment? My answer is because there was a voluntary audit and Mr. Russell was sent this check as part of that audit of tens of thousands of accounts. And I'd like to address the scope of that audit for just a moment in terms of what the scope of that first part of the audit was. Mr. Russell in his briefs says a lot that it was one-third of the class. At that stage in the case, there was only a complaint that alleged a class. And paragraph 48 of Mr. Russell's complaint said that the class he was alleging, all members of it had the same contract of Mr. Russell's. That is a variable rate or a minimum of 12 percent, that same contract. That contract was in place for eight years from 1994 to 2002. The exchange's first portion of the audit covered that exact group. Now that is the group that is the 46,000 adjustments and 33,000 refunds. The other numbers thrown out there are other contracts that the exchange addressed later that were not part of Mr. Russell's allegations in his complaint. Do you know what percentage of the putative class has not received a check? Received? No, I don't know. That's not part of the record. It surely must be more than two-thirds because 34,000 is two-thirds of 47,000. Well, the adjustments, when I talk about adjustments, those are reductions of interest rates. So here Mr. Russell was reduced from 14.25 to 12 percent, but not everyone was due a refund, and that's because we're talking about delinquent debt. So someone might still owe the exchange $1,000, have gotten a $100 adjustment in interest, but that doesn't mean that they were due a refund. So anyone who, when this adjustment was done, the reduction in interest, when a refund was due on the books, that's the group of 33,000 customers that were sent checks. Now, you say that the 46,000, the first group, has to be distinguished from the 100 and a few thousand later that were audited. The first group was all that the complaint covered. Now, I'm setting aside the uniform claim. This is purely the, I guess it's the DPP claim, correct? Right, that's the group that the exchanges audit covered. And you say they covered everyone who was within the scope of the complaint. I mean, I understand there were some subgroups depending on which plan they were under and so forth, but your assertion is that the complaint did not cover those other subgroups that incorporated the 100,000 additional audits? I think this is an important issue because it's a difference between having made a tender to some of the members of the putative class and made a tender to all of the members of the putative class, or at least all the ones that were eligible for a refund. I would direct the Court to paragraph 48 of Mr. Russell's complaint, and that's in the appendix at page 61. And it says, all members of the class have AFI's credit agreements that provide that the permissible DPP finance charge is between 12% and prime plus 4.75% per annum. All class members. Now, that was the alleged class. There was no class at this point in time when the exchanges audit was done, but those are the contracts that were addressed first. Now, there were other contracts that had other terms in terms of what rates should be applied,  but those were not part of Mr. Russell's class allegations. Now, what do you say to the argument? First of all, do you accept the proposition that Pitts would answer this case if the tender had been made only to Mr. Russell? Now, let's set aside the question for a moment of whether he turned it down or not. Let's assume that his conduct should be treated as having rejected the tender. Would you agree that Pitts would require us to reverse the District Court? I think it would be more directly on point. I mean, those Pitts and Weiss and cases like that, their main concern is with the defendant's strategy of targeting a named plaintiff in order to thwart a class action. That is the concern that is talked about in all of those cases. Now, suppose that there is a partial payment to some number of members of the class, let's say half the members of the class, and that may or may not be the situation depending on whether you are right about the way you've characterized the extent of the complaint. But suppose that a tender is made to half the members of the class. Does the Pitts rule still apply in that setting? And if not, why not? I don't think it does. It's certainly not squarely on point because the concern there is offered to the name plaintiff only. Should we follow Pitts and say, no, that's not good enough, or should we say that's good enough and therefore it's moot? Two points. One is the policy concern is with picking off the name plaintiff only in order to thwart a class action. That concern does not exist where tens of thousands of other accounts, tens of other thousands of refunds have been sent. So it's a policy concern that I don't think exists when they're part of a voluntary audit. Well, it might apply in the following sense, in that you might say the government has concluded that some of these people are entitled to a refund, but by no means as many as the class complaint alleges. And therefore, if you say the case is moot as soon as the government pays more than a handful of the claims, then the real dispute doesn't get adjudicated, right? As I mentioned, I don't think that issue needs to be reached here because it was the class alleged in the claim. But if you're wrong about that, let's assume for the moment that Mr. Vischer is going to get up and tell us that, no, the complaint really did cover the whole 150,000 people. And if we conclude that he's right and you're not, how do we deal with a partial, what amounts to a partial tender? Well, the district court, Mr. Vischer, made that argument below. And the district court gave Mr. Russell three months to locate an intervener on those other contracts. And intervention was denied. That's not before the court. But the court did allow a three-month period between the dismissal order and entering judgment. But I would also, in terms of the legal question, go back to the Sozna case and the Garrity case. And it's very clear that a plaintiff must have a live claim at the time that the class certification issue is decided. And in Sozna, the Supreme Court stated that a litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court. Now, the district court said that Mr. Russell's claim is not capable of repetition yet evading review. That is still an exception that can apply at this early stage, apart from any class action question. It does not apply here. And that rationale was- If you take the view that Mr. Russell is in the same position as some of the plaintiffs in these other cases, such as Pitts, and you view Mr. Russell's as having a transitory claim because it is subject to being eliminated by the government through a picking-off device. Now, I understand your argument that this is not a pick-off case. But the Sozna et al. analysis applies to pick-off cases per Pitts and the other court of appeals decisions, Simmons and Weiss, right? The Pitts case, yes. They say that that amounts to a form of transitory fleeting claim that would be subject to capable of repetition yet evading review type analysis. That is the rationale of those cases. Right. So then the question is, why isn't this that case? And you come back to say, well, because Mr. Pitts wasn't the only guy being picked off. Right. I mean, those cases- And then that leads us to the problem of what do we do about the fact that you pick off some but not all? This is not- And I understand your argument is, oh, we did pick off everybody. But if you're not right about that- Well, I don't think it's fair to say picking off when it's a comprehensive audit that the defendant conducts to voluntarily correct a problem. Well, but suppose the comprehensive audit had produced the decision that 150 people were entitled to payment but no more. So you paid 150 people. You say, well, that's not picking off. We paid 150 people. Would you think that the- what would be the right approach? Would you say, no, it's moot? Well, the district court here said that if there is someone with a live claim, they may come forward and intervene or they might bring their own class action. Well, the district court ruled prior to Pitts. The district court's decision seems to me- the rationale of the district court's decision seems to me at least potentially having been overcome by the analysis of the Ninth Circuit in Pitts. So looking to what the district court said seems to me problematical for you. You have to have a different rationale. Maybe it is that there were a lot of people who were picked off. But that's- if that's the rationale, that seems to me is not the rationale that was employed by the district court. The district court didn't rely on the fact that there were 30,000 payments here. It did with respect to the uniform payment, but not with respect to this. He relied on the fact that it was Mr. Pitts got his money. I mean, not Mr. Pitts. Mr. Russell got his money. Right, but also that there was no concern of picking off. All right. There was- that policy scenario is not- it doesn't exist here where there was a voluntary audit of tens of thousands. I was troubled by parts of the record that suggested that the plaintiffs were looking to find another lead plaintiff. They were unable to because they had also received a payment, and so they were out there searching and conducting the search. So it seems to me that the Pitts decision could arguably be extended in this situation because the actions of the government not only picked off Mr. Russell, but also deliberately picked off other potential lead plaintiffs, and time is ticking. Finally, the district court said it's over. Well, there was a voluntary audit conducted on the accounts. This audit resulted in refunds in most instances that were greater than what any individual could likely claim in contract damages, and that is because the exchange retroactively applied the lowest minimum rate under the set of contracts. Let me- I asked you before about the voluntary nature of the settlement, and I just have another question in that regard. Hopefully it's just one more. But you say it was a voluntary settlement. What do you mean by that? It was something done outside of the courtroom? If I said it was a voluntary settlement, there's no settlement here. Okay. It was a voluntary audit conducted by the exchange. The offer that you extended, which you claim settled the claim. Right. There was a payment made. There was a payment made, and that was voluntary on your part, on the government's part. Yes. And that was done outside the courtroom. Yes. Then you come back and you have the court enforce that offer. No, I mean there was no offer, and there was nothing that the court enforced. The exchange delivered the check. They're just payments that were accepted and not contested? Yes. I mean the facts are that the exchange delivered a check to Mr. Russell, and he never objected to that check. He never argued that it was an audit. With respect to the others, the 30,000, they were accepted, and there was no judicial action with respect to them and no further contest. Is that right? That's right. Those checks were sent, and the district court said that those refund checks were outside the aegis of the lawsuit. Can I ask you about the effect of the attorney fee claim on the question of mootness? I had an exchange with your opposing counsel dealing with the effect of the Lewis case. My understanding of Lewis is that the Supreme Court was saying that if there is a settlement of the basic claim, that the claim does not, whether of an individual or a claim of a group, that the pendency of an assertion of a right to costs and attorney's fees does not rescue the claim for mootness. You heard Mr. Vischer's response to my, at least tentative, proposed reading of Lewis. What is your reaction to that? I think the Supreme Court cases are quite clear, both the Lewis case and the Diamond case, that a claim for attorney's fees does not… Diamond against Charles, right, is the case? Yes, Diamond versus Charles, Lewis versus Continental Bank. And there's a Seventh Circuit case, is that the one you're referring to? Well, in the Premium Plus Partners case. That's Judge Easterbrook's opinion? Yes, I think so. Yes, and the Supreme Court has been quite clear that a claim for attorney's fees does not save the underlying claim. And what do I mean by underlying claim? Here, that's the Little Tucker Act contract damages claim. That claim is moot, and this hypothetical interest in attorney's fees does not save that claim from mootness. I'd also, on the attorney fees issue, like to direct the court to the Buchanan case, Buchanan versus West Virginia Department of Health and Human Resources. And in that case, the Supreme Court rejected the catalyst theory in terms of the prevailing party inquiry. And you say Buchanan applies in full force to EJIA claims, because I don't think Buchanan was an EJIA case, right? It wasn't, but the language of the court is very broad, and it recognizes that other federal statutes, fee-shifting statutes, use the term prevailing party, and so the case goes beyond. And you read Buchanan as applying not just to cases in which the resolution of the claims comes from the action of the third party, but also includes cases in which one of the parties to the lawsuits has conceded and terminated the lawsuit in a way that produces success for the plaintiff, but not by way of a judgment. Yes. Okay. How should we treat the Simmons case? Yeah. The Simmons case from the Fourth Circuit is very different from the facts here. I don't even think it comes close, but the Fourth Circuit there just merely said that settlement negotiations didn't move the case. It was settlement negotiations that were ambiguous. Now, the court talked about a judgment versus a contract to pay, and that's the context in which the court was saying, well, a judgment, we can understand why you would want a judgment over just a mere contract agreeing to pay, but here there was no contract agreeing to pay. There was a payment. A payment was already made, and the Simmons case just simply doesn't apply to the facts here. Anything further, Ms. Hunt? No. I would also just urge on the second appeal, the court denied Mr. Russell's Rule 60b-2 motion. I'm happy to entertain any questions, but that is subject to an abusive discretion standard, and the court was well within its discretion in denying Mr. Russell's motion and should be affirmed. This is getting a little far afield, and you should feel free to say it's outside the record, and you really prefer not to respond, but perhaps you have a response. There is an assertion that the amount that was paid actually is a significant amount. It's an underpayment, I guess, of around $30 to Mr. Russell, but presumably if it's similar to other members of the class, it would amount to a fair amount of money. Has the government looked into the question of whether there is merit to that recalculation or reached a conclusion with respect to the recalculation as to whether it has merit or not? If you don't know, feel free to say it's outside the record. I mean, it is outside the record. The record stands with the 12%, and there are many reasons why that analysis fails as a matter of law. Okay. Thank you, Ms. Hunt. Mr. Vischer has three minutes rebuttal time. First of all, let me address this question. The class, the paragraph that Ms. Hunt refers to in the complaint. Paragraph 48? That is not the paragraph that defines the class. I'm sorry. I thought I had the complaint here, but the class definition includes everybody who was charged from six years before the complaint on. And what they did was they cut off everyone after May of, I think, 2002, and they didn't give anybody after that. And they apparently didn't understand what the class was. And so they looked at this paragraph 48 and said, well, that must be the class. And when they decided to do this audit, which was incidentally only in November of 2009, so they first found out about this problem in November of 2007 when we filed the Briggs case, which has the identical claims in it. They didn't do any voluntary audit to see if they could do something then. They only did this audit starting in November, and they only went back six years. They only were trying to look at who we could get in this class. They weren't trying to say, oh, we're going to be the good guys and take care of everybody. They just said, how can we get rid of this case? Well, paragraph 48 starts with the language, the class of persons Briggs and Russell represent is defined as full colon. I mean, it sounds like that is the paragraph where one finds the class as being defined, right? That's pretty, I mean, very admirably clear language. Okay. I'm sorry, Your Honor. I didn't have it in plain for me. They were originally referring to a different paragraph. They referred to paragraph 48, and that's what I read from. Okay. Doesn't that say that class includes everyone after six years prior to the filing complaint? Well, let's see. It goes on a bit. But it says that all natural persons within the past six years that incurred pursuant to an AAFDS creditor. What page are you on, Judge? I'm sorry. I'm on 873 of the appendix in the first case. Well, there's nothing there that screams out to me at least that this covers some category of people other than the category that Ms. Hunt was referring to, but perhaps it does. It says everyone who is subject to these charges from a certain date. Within the last six years. So it includes everybody who is subject to these charges within the last six years. They only included the people who were subject to the charges up to 2003. So they didn't include everybody from 2003 to 2010. Now, did they include those people in the second round, the one that picked up the additional 100,000 people? What they did, Your Honor, they alleged that they included a lot more people. Whether they included the whole class… Well, you must think that they did because you come up with the number of people in the class by adding their two numbers of the people they audited. That's how you get to 150,000 people. They say they did. But one of the key questions here, Your Honor, there's one more thing on attorney's fees. When you have a class action, there's two different kinds of attorney's fees issues. One is whether you can get attorney's fees from the defendant. The other is can you get attorney's fees from your class, from your fund. And if you don't treat this as a class action, if it is a class action from the inception, the court is going to enforce your right to collect fees from your clients, your class. And that's what happens in a class fund. If the defendant just goes off and pays people, then the court is denying that opportunity and the class mechanism is severely hampered in any kind of common fund case. Let me ask you this question. Suppose that you filed a complaint and it was very clear how much there are 100,000 people and every single one of them is indisputably owed exactly the same amount of money, $500. And on the day the complaint is filed, the government looks and says, oh my goodness, he's right. I wish he told us this before, but he's right. We owe all these people $500. And on that day, that afternoon, with phenomenal governmental efficiency, they cut 100,000 checks for $500 and get them in express mail the next day. Do you still have a claim for attorney's fees? I think that's a more difficult case. That's why I pointed out the fact that we gave the government this complaint two months before it was filed. It may be a difficult case, but it's one that's important to me, at least, to know what your answer is. Well, Your Honor, I think that if you follow this line of cases, the logic in Pitts and the other cases, then you would treat that case as a certified class from the time the complaint was filed. And if you do that, you have to look at if you had a certified case, how can you get rid of a certified case? And you can't get rid of a certified case by sending out checks to everyone for a number of reasons. You don't know. The court wants to maintain, who did you pay? How much did you pay? How about all the people that the checks came back? What did you do? Did you go out and try to find them? And how about the fact that this is a common fund case, and the plaintiff has a right to have all those people pay some of their money? And all those issues would be destroyed, and the class action device would be severely damaged if you allowed to do that, although I admit that that's a much closer case. In some cases, the MCI case where the... Thank you, Mr. Fischer. I think we have your argument and your answer. Cases will be taken under advisement.